UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT J. REGINATO,<br><br>                          Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>                         Defendants. | Case No.: 3:15-cv-01963-L-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court in this civil rights action is Defendants' motion for summary judgment. Plaintiff filed an opposition and Defendants replied. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons which follow, Defendants' motion is granted in part and denied in part.

**I.  BACKGROUND**

This case arises from an incident on September 21, 2014. Plaintiff and his friend Gabriel Talley, Marine Corps officers, were celebrating Talley's return from Afganistan and Plaintiff's 21st birthday. Shortly after 2 a.m., they were in a crowded street in the Gaslamp Quarter in downtown San Diego. They encountered a melee. They saw an unconscious man on the ground and attempted to give first aid until medical help arrived. They were pushed away by police officer Nicholas Zastrow. A struggle ensued between

Talley and the police officer. Defendant police sergeant Vinson came to Zastrow's aid. Whether Plaintiff merely stood by in the same place he was after he had been pushed, or punched a police officer is disputed. During the struggle, Plaintiff was again pushed by a police officer and hit the pavement with the back of his head. As he attempted to get up, Vinson punched him in the head and face repeatedly until Defendant police officer McDonald told him to stop. Plaintiff claims he sustained injuries to his head, face and eye, as well as nerve damage to his wrists and hands due to handcuffing.

Plaintiff was arrested for violations of Penal Code section 69 (resisting executive officer) and 243(b) (battery on Zastrow and Vinson). At the preliminary hearing in the criminal proceeding, state court received testimony of Zastrow, McDonald and Vinson, and reviewed two video recordings from police officer body cameras. The court found that there was no evidence of battery on Vinson. The evidence regarding battery on Zastrow was thin and vigorously disputed. The video camera recordings were inconclusive, McDonald testified he did not see Plaintiff punch Zastrow, Zastrow testified that he did not recall Plaintiff punching him, none of the police officers' reports mentioned that Plaintiff had punched Zastrow, only Vinson testified to it. Based entirely on Vinson's testimony, which was found credible, the court held that there was sufficient evidence for trial on charges under Penal Code section 69 (resisting executive officer) and 243(b) (battery on Zastrow); however, the charges were reduced from felony to misdemeanor.

Plaintiff filed this action against the City of San Diego, Vinson and McDonald alleging violation of his constitutional rights in violation of 42 U.S.C. § 1983, negligence, battery, and violation of California Civil Code section 52.1.[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1] All claims against McDonald and the second cause of action for § 1983 violations against the City have since been voluntarily dismissed. (Doc. no. 24.)

Three theories of § 1983 liability remain against Vinson -- excessive force in arresting Plaintiff, arresting him without probable cause, and giving false testimony at the preliminary hearing. Defendants move for summary judgment.

## II. DISCUSSION

To qualify for summary judgment the moving party must demonstrate the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### A. Constitutional Violations for False Arrest and Malicious Prosecution

Plaintiff brings a § 1983 claim against Vinson for arrest without probable cause. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir.1998). The false prosecution claim against Vinson depends on the success of the same argument.

Defense contends that Plaintiff is collaterally estopped from arguing there was no probable cause because the state court decided the issue at the preliminary hearing in the criminal proceeding. Plaintiff counters that the bar does not apply because state court did not make an explicit finding that there was probable cause, and that his case falls within an exception to the collateral estoppel doctrine because Vinson gave false testimony.

"Under the doctrine of collateral estoppel, judgment in a prior suit between parties precludes relitigation by the parties of issues actually litigated and necessary to the outcome of the first action." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985). Federal courts must "give state court judgments the same full faith and credit they would have in the state's own courts by applying the preclusion law of the

state in which the judgment was rendered." *Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir. 1985).

> In California, issue preclusion applies when five requirements are met: (1) the issue sought to be relitigated must be identical to the issue decided in the earlier action; (2) the issue must have been actually litigated and (3) necessarily decided in the earlier action; (4) the earlier decision must be final and made on the merits; and (5) the party against whom issue preclusion is asserted must have been a party to the earlier action or in privity with such a party.

*Wige v. City of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir. 2013). Generally, "each of these requirements will be met when courts are asked to give preclusive effect to preliminary hearing probable cause findings in subsequent civil actions for false arrest and malicious prosecution." *Id.*; *McCutchen v. City of Montclair*, 73 Cal.App.4th 1138, 87 Cal.Rptr.2d 95, 99–101 (1999); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) ("When an individual has a full and fair opportunity to challenge a probable cause determination during the course of the prior proceedings, he may be barred from relitigating the issue in a subsequent § 1983 claim.").

Here, probable cause was determined at the preliminary hearing when the trial judge, after witness testimony, two video recordings, and argument by the prosecution and defense, determined there was enough evidence to support resisting executive officer and battery on Zastrow. (Def. Ex. 5 at 89.)

Relying on *Wige v. City of Los Angeles,* Plaintiff argues collateral estoppel should not apply because Vinson lied at the preliminary hearing. The state court stated that it relied exclusively in Vinson's testimony to find the evidence sufficient. (Def. Ex. 5 at 89; *see also id.* at 75.) "[I]ssue preclusion should be denied 'where the plaintiff alleges that the arresting officer lied or fabricated evidence presented at the preliminary hearing.'" *Wige*, 713 F.3d at 1186 (quoting *McCutcheon v. City of Montclair*, 73 Cal. App. 4th 1138, 1146 (Cal. Ct. App. 1999)). However, "in some circumstances a probable cause finding necessarily entails a rejection of challenges raised to the veracity of the arresting

5

officer." *Id*. at 1187. *Wige* found this principle not to apply because "the state court never purported to find" on the officer's credibility when determining probable cause. *Id*. After the preliminary hearing the defendant moved to dismiss for lack of probable cause, but the motion was denied, not because the court found probable cause, but because the issue was more appropriately resolved at trial rather than at the preliminary hearing." *Id*. On the other hand, collateral estoppel applies where veracity is challenged at the preliminary hearing, the court makes a credibility finding, and then finds probable cause. *Greene v. Bank of America*, 236 Cal. App. 4th 922, 934-35 (2015) 934.

Here, as in *Greene*, the state court found Vinson's testimony credible after Plaintiff's defense counsel made a well-supported and well-articulated argument to disregard it as contradictory to all other evidence and motivated by Vinson's desire to justify his use of force. (Def. Ex. 5 at 84-89.) Because state court expressly found Vinson's testimony credible and, based thereon, found probable cause for two of the charges, Plaintiff is collaterally estopped from relitigating the issue of probable cause.

To the extent Defendants seek summary adjudication of the false arrest and malicious prosecution theories of § 1983 liability, their motion is granted.

**B.  Constitutional Violation Based on Excessive Force**

Defendants next contend that the force Vinson used in arresting Plaintiff was reasonable. "[U]se of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In determining whether the force was reasonable, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Tekle v. United States*, 511 F.3d 839, 844 (2007) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Generally,

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the
6
3:15-cv-01963-L-WVG

> fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97 (internal quotation marks and citations omitted). Keeping in mind the "standard of reasonableness at the moment," *id.* at 396, several factors are considered:

> The first factor in determining whether the force used was excessive is the severity of the force applied. The second factor, and the most important, is the need for the force. The amount of force used is permissible only when a strong government interest compels the employment of such force. Factors to be considered in determining the need for the force include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Finally, [the court] must balance the force used against the need, to determine whether the force used was greater than is reasonable under the circumstances. This determination requires careful attention to the facts and circumstances of each particular case and a careful balancing of an individual's liberty with the government's interest in the application of force. Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment . . . in excessive force cases should be granted sparingly. This is because police misconduct cases almost always turn on a jury's credibility determinations.

*Tekle*, 511 F.3d at 844-45 (internal quotations marks and citations omitted).

The force at issue here is Vinson punching Plaintiff in the head and face approximately seven times, after Plaintiff had been knocked to the ground by another officer and was trying to stand up. (Doc. no. 27 ("Undisputed Facts") at 3.) Police officers are not required to use the least intrusive degree of force possible, so long as the force used is reasonable. *Forrester v. City of San Diego,* 25 F.3d 804, 807-08 (9th Cir. 1994). It is appropriate to consider a suspect's refusal to comply with instructions in assessing whether the force is needed to effectuate compliance. *Deville v. Marcantel,* 567 F.3d 156, 167 (9th Cir. 2009). Punching a suspect to make an arrest is not excessive per se. *Blankenhorn v. City of Orange,* 485 F.3d 463, 477 (9th Cir. 2007).

Vinson attests that he stopped punching Plaintiff when Plaintiff stopped resisting. (Vinson Decl. at 3.) However, McDonald, who was dealing with Plaintiff when Vinson arrived, testified that he told Vinson to stop punching. (Def. Ex. 5 at 26-27.) It is undisputed that Plaintiff had not been told he was under arrest when he was knocked to the ground, and he had not been given any commands or warnings. (Undisputed Facts at 3.) Vinson does not deny that he did not instruct Plaintiff to stay on the ground. (*See* doc. no. 22-1 (Def.'s Mot.) at 18.) He started punching first. When he informed Plaintiff that he was resisting arrest and instructed him to put his hands behind his back, Plaintiff complied. (*Id.*) Based in the severity and persistence of the force and lack of prior warning, but considering the chaotic circumstances surrounding Vinson, the reasonableness of the force he used presents a genuine issue of fact which cannot be decided on summary judgment. *See Tekle*, 511 F.3d at 845 (quoting *Graham*, 490 U.S. at 396).

Alternatively, Defendants argue that they are entitled to qualified immunity on the issue of excessive force. "The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The protection "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks and citation omitted). The qualified immunity inquiry has two parts. "First, a court must decide whether the facts that a plaintiff has . . . shown (see Rules 50, 56) make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." *Pearson,* 555 U.S. at 232 (internal quotation marks and citations omitted).

If Plaintiff's version of the facts is believed (*see* Def. Ex. 2 & Pl. Ex. B (collectively, Reginato Depo.)), Plaintiff has made out a case that the force was

8

excessive. He was already on the ground, he was not resisting arrest and was compliant once he received instructions. On the other hand, the force used was severe and delivered before any instructions.

Furthermore, the pertinent law was clearly established at the time of the incident. To be clearly established for purposes of qualified immunity, the law should not be defined at a "high level of generality." *White v. Paulty,* 580 U.S. __, 137 S.Ct. 548, 552 (2017). The contours of the constitutional right at issue must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). The law "does not require a case directly on point, but existing precedent must have placed the constitutional question beyond debate." *Id.*

Defendants argue that Vinson interpreted Plaintiff's attempt to get us as resisting arrest, thus making qualified immunity applicable to this case. However, it is undisputed that Plaintiff received no instruction to stay on the ground or indication that he was under arrest until at least seven punches had been delivered. That force used to make an arrest must be balanced against the need for the force has been established since *Graham v. Connor,* and was applied to circumstances similar to the case at hand in *Blankenhorn v. City of Orange,* 485 F.3d 463, 480-81 (9th Cir. 2007). If Plaintiff's version of the facts is believed, Vinson is not entitled to qualified immunity.

For the foregoing reasons, Defendants' motion for summary adjudication of the excessive force claim is denied.

**C. State Law Claims**

Defendants seek summary adjudication of the claim for violation of California Civil Code § 52.1. This claim is derivative of Plaintiff's claims for violation of federal constitutional rights. Because Plaintiff's excessive force claim survives summary judgment, § 52.1 claim survives to the same extent.

Finally, Defendants argue that Plaintiff cannot establish negligence or battery because there is no evidence that Vinson violated Plaintiff's constitutional rights. The

excessive force claim survives Defendant's motion.  The negligence and battery claims survive as well to the extent they are based on the contention that Vinson used excessive force on Plaintiff.

## III. CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. The motion is granted to the extent that Plaintiff's claims of false arrest and malicious prosecution are barred by issue preclusion.  The motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated:  September 30, 2018

_____
Hon. M. James Lorenz
United States District Judge